# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**

    **Plaintiff/Respondent,**

**v.**                                                                                  **No. 15-cv-0770 KG/SMV**
                                                                                               **14-cr-3643 KG-1**

**JOEL CORDOVA-ORDAZ**
**aka JOEL ORDEZ-CORDOVA,**

    **Defendant/Petitioner.**

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION

THIS MATTER is before the Court on Defendant/Petitioner ("Petitioner") Joel Cordova-Ordaz's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 ("Motion"), filed on August 31, 2015. [CV. Doc. 1, CR. Doc. 29].[1] Plaintiff/Respondent ("the Government") responded on November 23, 2015. [CR Doc. 8, CR. Doc. 37]. Petitioner did not file a reply, and the time for doing so has passed. The Honorable Kenneth J. Gonzales, United States District Judge, referred this matter to me for proposed findings and a recommended disposition. [CV. Doc. 5]. Having reviewed the parties' submissions, the relevant law, the records in this case and both of Petitioner's underlying criminal cases, I recommend that the Motion be DENIED, except with regard to the issue of whether Petitioner directed his counsel to file an appeal after sentencing. As to that claim, I conclude that it requires a limited evidentiary hearing, and I will order such a hearing if the Court adopts this PF&RD.

---

[1] References that begin with "CV" are to Case No. 15-cv-0770 KG/SMV. References that begin with "CR" are to the underlying criminal case, Case No. 14-cr-3643 KG-1.

**Background**

Petitioner, a citizen of Mexico living legally in the United States, pleaded guilty to possession with intent to distribute more than 500 grams of cocaine in the United States District Court for the Western District of Texas on July 7, 2010. *United States v. Gonzalez-Ramirez*, Case. No. 3:09-cr-01267-FM-5 (W.D. Tex. 2009) [ECF. 254]. As a result, he was deported to Mexico. [CR. Doc. 35] at 5. On September 2, 2014, a United States Border Patrol agent encountered Petitioner in Doña Ana County, New Mexico. He was arrested and charged with illegally reentering the United States under 8 U.S.C. § 1326. [CR. Doc. 1] at 1.

Petitioner pleaded guilty in a hearing before the Honorable Lourdes A. Martínez, United States Magistrate Judge, on October 24, 2014. He was represented at the hearing by Mr. Noel Orquiz. [CR. Doc. 36] at 8. The transcript of the proceeding indicates that interpreter services were utilized, and that Petitioner could hear the interpreter. [CR. Doc. 36] at 3. The colloquy proceeded in relevant part:[2]

> THE COURT: At this stage of your proceedings each of you has the right to plead not guilty and to proceed to a jury trial. At that trial you would have a right to be represented by your attorney. At your trial you would have a right to see and hear the witnesses brought by the Government to testify against you and to have your attorney cross examine or question those witnesses. At your trial you would have a right to present your own evidence in defense of your crime and bring in your witnesses to appear and testify for you, and you can bring them in by court order.
>
> At your trial each of you has a right to be presumed innocent of the charge you're facing unless the Government proves your guilt beyond a reasonable doubt, and, finally, at your trial you would

---

[2] The colloquy was conducted with a group of defendants, including Petitioner. As noted, Judge Martínez also had an individual conversation with Petitioner regarding his desire to plead guilty without a plea agreement.

have a right to remain silent, because the Government cannot force you to testify against yourself, and your silence cannot be used to prove that you're guilty of your crime. You would retain, however, the constitutional right to take the witness stand in your own defense if you wanted to.

If you plead guilty today, however, there will be no trial and you will have given up all of these rights to a trial that I have just described for you. In just a few minutes I will . . . be asking you questions to satisfy myself that you are both competent and capable of entering into an informed, knowing, voluntary plea.

You all have the same charge, and that is the felony offense of reentering the United States illegally after you had already been deported or removed. When you're convicted of that crime, and depending on your criminal history, you face maximum penalties of up to 20 years in prison, a fine of up to $250,000, up to three years of supervised release, and a $100 special penalty assessment. In addition to those maximum penalties, however, each of you face additional consequences of pleading guilty today.

 One of those consequences is that, because you are not a U.S. citizen, you may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Furthermore, based on your status in this country and the charge to which you are pleading guilty, it is almost certain that you will be deported from this country and not be allowed to return again illegally without facing further and more serious federal charges.

----------

THE COURT: Have you gone over your case with your attorney and talked to your attorney about the charge you're facing and any possible defense to that charge you might have?

PETITIONER: Yes.

THE COURT: Did you have enough time to go over your case with your attorney?

PETITIONER: Yes.

PETITIONER: Did your attorney answer all of your questions about your case and this proceeding to your satisfaction?

PETITIONER: Yes.

THE COURT: Are you pleased and satisfied with the advice and representation of your attorney?

PETITIONER: Yes.

THE COURT: Do you wish to give up all of those rights to a trial so that you can plead guilty today?

PETITIONER: No.

THE COURT: Do you want to go to trial?

PETITIONER: No.

THE COURT: Do you want to give up your right to a trial so that you can plead guilty today?

PETITIONER: Oh, yes.

THE COURT: Do you understand that once you plead guilty and you're sentenced you will not be able to change your mind or withdraw your plea?

PETITIONER: Yes.

THE COURT: Have you received a copy of the criminal complaint and was that document read to you in Spanish?

PETITIONER: Yes.

----------

THE COURT: Each of you, as I explained, is charged with a felony offense of reentering the United States illegally after you had already been deported or removed. Do you understand that charge?

PETITIONER: Yes.

THE COURT: And as I explained earlier, if you're -- when you're convicted of this crime today, and depending on your criminal history, you face maximum penalties of up to 20 years in prison, a fine of up to $250,000, up to three years of supervised release, and a $100 special penalty assessment. Do you understand those maximum penalties?

PETITIONER: Yes.

THE COURT: Did you understand all of the consequences of your pleading guilty today that are read to you at the beginning?

PETITIONER: Yes.

----------

THE COURT: Before I can accept your guilty plea, I need to make sure it's going to be voluntary. Did anybody promise you anything in order to get you to plead guilty today?

PETITIONER: No.

THE COURT: Is anyone forcing you to plead guilty?

PETITIONER: No.

THE COURT: Are you pleading guilty of your own free will?

PETITIONER: Yes.

----------

THE COURT: I'm going to ask each of you to listen carefully to the factual basis for your crime. These are the elements that form each -- these are the facts that form each of the elements of your crime. In a minute I'll ask you if you agree or disagree with any of them. Ms. Winston [Assistant United States Attorney], if these cases were to go to trial, in each case what would the Government be able to prove beyond a reasonable doubt?

[AUSA]: Your Honor, the Government would be able to prove, on the dates and places alleged in each information, each defendant, a citizen of another country, was found in the United States in the District of New Mexico after having been previously deported on the deportation dates listed in the Information, and after having knowingly reentered the United States, none of these defendants received permission to reenter the United States.

THE COURT: Are those facts true as they pertain to you?

PETITIONER: Yes.

THE COURT: Are you a citizen of Mexico?

PETITIONER: Yes.

THE COURT: Were you previously deported from the United States?

PETITIONER: Yes.

THE COURT: After you were deported, did you have legal permission to reenter the United States?

PETITIONER: No.

THE COURT: I'm going to ask each of you how you plead to the felony offense of reentering the United States illegally after you had already been deported or removed. When I call your name, please answer either "not guilty" or "guilty." Joel Cordova-Ordaz.

PETITIONER: Guilty.

----------

THE COURT: It's the finding of the Court that each defendant is fully competent and capable of entering an informed plea, that each is aware of the nature of the charge he or she is facing and all of the consequences of his or her plea, that the plea of guilty is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of this offense. I

> hereby accept your plea of guilty, and I now adjudge you guilty of
> the crime charged in your respective Informations.

[CR. Doc. 36] at 4–18.

Judge Martínez confirmed Petitioner's desire to plead guilty to the Information [CR. Doc. 10] without the benefit of a plea agreement so that he could argue for a downward variance from the range provided by the United States Sentencing Guidelines ("USSG") at his sentencing. *Id*. at 19.

Prior to his sentencing hearing on February 27, 2015, Petitioner filed a Sentencing Memorandum, in which he requested a downward variance from the guidelines range of 46 to 57 months. [CR. Doc. 14] at 1. At his sentencing hearing, the Honorable Joe Billy McDade, Senior United States District Judge, adopted the presentence report ("PSR") (attached hereto as Exh. A) as his factual findings. [CR. Doc. 35] at 4. After noting that the PSR recommended a sentence enhancement based on Petitioner's prior conviction,[3] Judge McDade remarked that he had "never been completely sold that the extreme enhancements are appropriate in every case." *Id*. at 8. He also noted Petitioner's "lack of any serious criminal history" other than the drug trafficking conviction. *Id*. at 9. Ultimately, Judge McDade imposed a sentence of 37 months. *Id*. at 10. He advised Petitioner of his right to right to appeal within 14 days. *Id*. Judgment was entered against Petitioner on March 6, 2015. [CR. Doc. 19].

---

[3] Sentencing Guidelines § 2L1.2 provides the framework for determining the sentence for unlawful entry into the United States. If a defendant is charged with unlawful reentry and was previously convicted of "a drug trafficking offense for which the sentence imposed exceeded 13 months," the defendant's offense level under the USSG will increase by "16 levels if the conviction receives criminal history points under Chapter Four or by 12 levels if the conviction does not receive criminal history points." U.S.S.G. § 2L1.2. Because of Judge McDade's concern about the lack of empirical basis for and the reliability of the 16-level enhancement, he instead applied a 12-level enhancement, lowering the total offense level from 21 to 17, and the guidelines range from 46–57 to 30–37 months. [CR. Doc. 35] at 8, 10.

Petitioner filed, pro se, a Notice of Appeal to the United States Court of Appeals for the Tenth Circuit on August 10, 2015 [CR. Doc. 22], 157 days after judgment was entered against him. On August 24, 2015, the Tenth Circuit dismissed his appeal as untimely, noting that it was "inordinately late." [CR. Doc. 27-1] at 2.

Petitioner filed the instant Motion on August 31, 2015. [CV Doc. 1, CR. Doc. 29]. The Court granted the Government's Motion Requesting the Court to Rule on the Waiver of the Attorney-Client Privilege Related to Defendant's Motion under 28 U.S.C. § 2255 [CR. Doc. 32, CV. Doc. 4], finding that Petitioner had impliedly waived the attorney-client privilege with respect to those communications necessary to prove his claims. [CR. Doc. 34, CV. Doc. 7]. The United States filed its Response on November 23, 2015. [CR. Doc. 39, CV. Doc. 8]. Petitioner did not file a Reply.

### The § 2255 Standard

A petition under 28 U.S.C. § 2255(a) attacks the legality of a federal prisoner's detention. *Bradshaw v. Story*, 86 F.3d 164, 166 (10th Cir. 1996). Under § 2255(a), a federal prisoner "may move the court which imposed the sentence to vacate, set aside or correct the sentence" if "the sentence was imposed in violation of the Constitution or laws of the United States, or [if] the court was without jurisdiction to impose such sentence, or [if] the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. A litigant who appears pro se is entitled to a liberal construction of his allegations, though courts must apply the same legal standards applicable to filings drafted by attorneys. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1999). However, courts are "not required to fashion [a pro se

litigant's] arguments for him where his allegations are merely conclusory . . . and without supporting fact[s]." *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Hall*, 935 F.2d at 1110.

### Standard for Ineffective-Assistance-of-Counsel Claims

The test for making a claim of constitutionally ineffective assistance of counsel was set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a defendant must satisfy a two-part test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial.

466 U.S. at 687. Both showings must be made to satisfy the *Strickland* standard. *Id.* The Court need not address both prongs of the standard if the defendant makes an insufficient showing on one of the prongs. *Id.* at 697. In applying the two-part *Strickland* test, a court may address the performance and prejudice components in any order. *Boltz v. Mullin*, 415 F.3d 1215, 1222 (10th Cir. 2005).

Under the first prong, a defendant must demonstrate that his counsel's performance was deficient. The appropriate standard for attorney performance is that of reasonably effective assistance; the defendant must demonstrate that counsel's representation, considering all the circumstances, fell below an objective standard of reasonableness based on prevailing

9

professional norms. *See Strickland*, 466 U.S. at 687–88. For counsel's performance to be constitutionally ineffective, it must have been "completely unreasonable, not merely wrong." *Hoxsie v. Kerby*, 108 F.3d 1239, 1246 (10th Cir. 1997) (quoting *Hatch v. Oklahoma*, 58 F.3d 1447, 1459 (10th Cir. 1995)). In evaluating an attorney's performance, the Court must be highly deferential:

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Strickland*, 466 U.S. at 689 (internal quotation marks omitted).

In applying this test, the Court must give considerable deference to an attorney's strategic decisions and "recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. "Neither hindsight nor success is the measure" of whether counsel was effective, and "effective" is not synonymous with victorious or flawless. *Dever v. Kan. State Penitentiary*, 36 F. 3d 1531, 1537 (10th Cir. 1994). Rather, to be considered *ineffective* assistance of counsel, "the representation must have been such as to make the trial a mockery, sham, or farce, or resulted in the deprivation of constitutional rights." *Id*. (citing *Lorraine v. United States*, 444 F.2d 1, 2 (10th Cir. 1971)).

In order to satisfy the second prong of *Strickland*, a defendant asserting ineffective assistance of counsel must also affirmatively prove prejudice. *Strickland*, 466 U.S. at 693. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the [trial] would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

## ANALYSIS

Petitioner makes five claims of ineffective assistance of counsel: (1) counsel did not advise Petitioner of his constitutional rights, resulting in an unknowing and involuntary guilty plea; (2) counsel did not object to the PSR with regard to Petitioner's prior conviction; (3) counsel failed to argue that there were irregularities in the underlying deportation order; (4) counsel failed to ensure that there was an adequate factual basis for Petitioner's guilty plea; and (5) counsel did not file an appeal even though Petitioner indicated his desire to appeal or otherwise challenge his conviction immediately after sentencing. [CR. Doc. 29, CV. Doc. 1] at 4–8.

### I. Petitioner has failed to show that his guilty plea was unknowing or involuntary.

Petitioner argues that his guilty plea is invalid because it was "unknowing and [involuntary]" because his counsel did not advise him of his "Boykin trial rights" and did not advise him "pursuant to [R]ule 11" of the Federal Rules of Criminal Procedure. [CR. Doc. 29, CV. Doc. 1] at 4. Petitioner provides no other details as to what he did and did not know at the time of his guilty plea, or why his guilty plea was not voluntary.

*Boykin v. Alabama*, 395 U.S. 238, 242–44 (1969) requires the Court—not counsel—to conduct an on-the-record examination of the defendant as to whether the defendant's plea is knowing and voluntary.  This inquiry should include questions regarding whether "the defendant understands the nature of the charges, [the defendant's] right to a jury trial, the acts sufficient to constitute the offenses for which [the defendant] is charged and the permissible range of sentences."  *Id*. at 244 n.7.  Fed. R. Crim. P. 11 codifies *Boykin* and requires the Court, among other things, to ensure that a defendant understands the consequences of a guilty plea and that the plea is voluntary.  *See* Fed. R. Crim. P. 11(c) advisory committee's notes to 1974 amendment.  A defendant's declarations in open court as to whether his plea is knowing and voluntary carry "a strong presumption of verity," which form a "formidable barrier in any subsequent collateral proceedings."  *Blackledge v. Allison,* 431 U.S. 63, 74 (1977).

While counsel cannot be ineffective for failing to satisfy an obligation that falls upon the Court, counsel has an independent obligation to ensure that his or her client's plea is knowing and voluntary.  *Padilla v. Kentucky*, 559 U.S. 356, 364 (2010) ("Before deciding whether to plead guilty, a defendant is entitled to the effective assistance of competent counsel.") (internal quotations marks omitted); *Henderson v. Morgan*, 426 U.S. 637, 644–45 (1976) (finding that defendant's guilty plea was not knowing and voluntary because neither defense counsel nor the court advised defendant of "intent" element of crime).  However, counsel's failure to properly advise a defendant does not, without more, constitute ineffective assistance of counsel.  The defendant must also show that he or she was prejudiced by this failure.  *See U.S. v. Mascheroni*, 612 F. App'x. 504, 507 (10th Cir. 2015) (finding from the "substantial evidence of the plea

agreement and plea colloquy" that [defendant's] plea was knowing and voluntary" despite defendant's allegations that his counsel failed to ensure that his plea was knowing and voluntary).

Here, counsel stated under penalty of perjury that he advised Petitioner on several occasions of the "rights of the accused, [Petitioner's] trial rights," and the maximum possible penalty for the crime. He also stated that he discussed the effect a guilty plea would have on Petitioner's constitutional rights. [CR. Doc. 37-1, CV. Doc. 8-1] at 2. Nonetheless, assuming that Petitioner is correct and that his counsel did not so advise him, Petitioner fails to show that he was prejudiced by this failure. Before accepting Petitioner's plea, Judge Martínez reviewed all of the rights Petitioner would give up by pleading guilty, [CR. Doc. 36] at 4, and found that he understood those rights, *id*. at 12. Petitioner also confirmed that he understood the charges against him, the possible maximum penalties, and all of the consequences of pleading guilty. *Id*. at 14. He stated that his plea was voluntary and of his own free will. [CR. Doc. 36] at 15. He further stated that no one promised him anything to get him to plead guilty, and he was not being forced to plead guilty. *Id*. Petitioner has alleged no facts showing that his own sworn statements in open court should be disregarded. Petitioner has failed to show that his guilty plea was unknowing or involuntary.

## II.  Petitioner has failed to show that his counsel should have objected to the use of the PSR at his sentencing hearing.

Petitioner alleges that the prior conviction used by the "probation officer" in calculating his sentence was "unsupported" and that Judge McDade should not have relied on the probation officer's "bare assertions" to increase Petitioner's sentence. [CR. Doc. 29, CV. Doc. 1] at 5.

13

Petitioner's PSR, adopted by Judge McDade as his factual findings during the sentencing hearing, outlines the calculation of Petitioner's sentence under the USSG. PSR at 4. The PSR states that "[Petitioner] was previously deported subsequent to a conviction for a drug trafficking offense in which a sentence in excess of 13 months was imposed . . . [t]herefore, a 16 [offense] level increase is applicable." *Id.* The PSR also refers to the case number of the prior conviction (Case No. EP-09-CR-1267FM(5) (W.D. Tex. 2009).

The Judgment and Commitment in the earlier case indicates that Petitioner pleaded guilty to possessing with intent to distribute more than 500 grams of cocaine in 2010. (Case No. EP-09-CR-1267FM(5) [Doc. 254] at 1. It also indicates that Petitioner was sentenced to 18 months in prison, after which he was to be released to the custody of the Immigration and Customs Enforcement agency. *Id*. at 2. Petitioner fails to show that the conviction was "unsupported." The record from that case makes clear that he was convicted of a drug trafficking offense, sentenced to more than 13 months, and subsequently deported. His counsel was not ineffective for failing to challenge the use of the prior conviction, as such a challenge would have been meritless. *See Sperry v. McKune,* 445 F.3d 1268, 1275 (10th Cir. 2006) (counsel not ineffective for failing to raise meritless issue).

**III.   Petitioner has failed to show that his counsel did not ensure that there was an adequate factual basis for his plea.**

Petitioner alleges that his counsel was ineffective because he failed to ensure that there was an adequate factual basis for his guilty plea. [CR. Doc. 29, CV. Doc. 1] at 7. Petitioner provides no additional details or information about this allegation. "[Fed. R. Crim. P.] 11(f) permits the trial judge to find the factual basis for the plea in anything that appears in the

record." *United States v. Keiswetter*, 860 F.2d 992, 996 (10th Cir. 1988). It is clear from the transcript of the plea hearing that after the Assistant United States Attorney stated the factual basis for the crime with which Petitioner was charged, Petitioner responded that the facts stated were true. [CR. Doc. 36] at 17. Petitioner further indicated that he was a citizen of Mexico, that he had been previously deported, and that he did not have legal permission to reenter the United States. *Id*. at 17–18. Petitioner's assertion that his counsel was ineffective for failing to ensure that there was a factual basis for his guilty plea fails, as it is clear from Petitioner's own sworn statements in open court that his plea was supported by sufficient facts.

**IV.     Petitioner has failed to show that there were irregularities in his underlying deportation order.**

Petitioner challenges the underlying deportation order on which his conviction for illegal reentry was predicated because he alleges (i) he "was not advised of his right to appeal or right to counsel in Spanish," and (ii) "[t]here is no record of him validly waiving his right to counsel in his removal proceeding."[4] [CR. Doc. 29, CV. Doc. 1] at 7. Consequently, Petitioner contends that his counsel was ineffective for "failure to argue that there were irregularities in the underlying deportation order." *Id.*

Originally, Congress did not allow defendants to challenge underlying removal orders in illegal reentry cases. *United States v. Mendoza-Lopez*, 481 U.S. 828, 835–37 (1987). However, the Supreme Court has since determined that, to comply with due process, defendants must have some opportunity for meaningful review of administrative proceedings, such as removal

---

[4] It is well-settled that "there is no right to *appointed* counsel in deportation proceedings" because it is a civil, not criminal, matter. *Michelson v. Immigration & Naturalization Services*, 897 F.2d 465, 468 (10th Cir. 1990) (emphasis added).

hearings, that affect criminal sanctions. *Id.* at 837–38.  A final deportation order is presumed legal. *United States v. Adame*, 607 F.3d 647, 651 (10th Cir. 2010).  To challenge his underlying deportation order in a prosecution for illegal reentry, a defendant must show (1) he exhausted administrative remedies; (2) he was improperly deprived of judicial review; and (3) the deportation order was fundamentally unfair.  8 U.S.C. § 1326(d).[5]

Even if Petitioner could satisfy the last two elements based on the self-serving allegations in his Motion, he does not satisfy the first element.  Petitioner has provided no evidence that he exhausted, or even pursued, any administrative remedies against the order, let alone any evidence that he provided notice of exhaustion to his counsel prior to pleading guilty.  Without such information, counsel's failure to challenge the deportation order was not ineffective.  *See Hawkins v. Hannigan*, 185 F.3d 1146, 1152 (10th Cir. 1999) (failure to raise meritless argument cannot constitute ineffective assistance of counsel).  Petitioner has failed to establish he had a plausible argument for challenging the underlying deportation order.  As such, he has not shown his counsel was ineffective for failing to argue that there were irregularities in that order.

### V. Petitioner is entitled to an evidentiary hearing to determine whether he instructed counsel to file a direct appeal.

Petitioner asserts that his counsel rendered ineffective assistance by failing to timely file a notice of appeal. [CR. Doc. 29, CV. Doc. 1] at 7.  "[A] lawyer who disregards specific

---

[5] In *Mendoza-Lopez* and *Adame*, the defendants were challenging an underlying deportation order on direct appeal. However, the Court has found no authority suggesting that the three-factor test used in those cases is not equally applicable to a § 2255 petition.  *See Favela-Gonzalez v. United States*, No. 2:14-cv-0257 RB/GBW (D.N.M. Jan. 29, 2015), [ECF No. 12] at 16 (applying the three factors found in 8 U.S.C. § 1326(d) in a habeas case where petitioner challenged the underlying deportation order).

instructions to perfect a criminal appeal acts in a manner that is both professionally unreasonable and presumptively prejudicial." *United States v. Snitz*, 342 F.3d 1154, 1155–56 (10th Cir. 2003) (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000)). "Those whose right to appeal has been frustrated should be treated exactly like any other appellants; they should not be given an additional hurdle to clear just because their rights were violated at some earlier stage in the proceedings;" that is, they do not have to first show that their grounds for appeal are meritorious before they are allowed an appeal. *Rodriquez v. United States,* 395 U.S. 327, 330 (1969). Therefore, if a defendant "actually asked counsel to perfect an appeal, and counsel ignored the request," counsel was per se ineffective and "[the defendant] will be entitled to a delayed appeal." *United States v. Garrett*, 402 F.3d 1262, 1267 (10th Cir. 2005).

In his sworn motion, Petitioner states that he "met with his attorney immediately after sentencing and . . . did indicate his desire to appeal or challenge the conviction ('actual innocence')." [CR. Doc. 29, CV. Doc. 1] at 8. In his sworn affidavit, Petitioner's counsel states that when they met after the sentencing hearing, he advised Petitioner that he did not think there were any grounds for an appeal and that Petitioner agreed not to file an appeal. Counsel states that Petitioner "never specifically asked me to file an appeal on his behalf; and I had no reason to believe that given his situation he would want to file an appeal." [CR. Doc. 37-1, CV. Doc. 8-1] at 5.

An evidentiary hearing must be held on a § 2255 motion "[u]nless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also United States v. Galloway*, 56 F.3d 1239, 1240 n.1 (10th Cir. 1995). "The

purpose of an evidentiary hearing is to resolve conflicting evidence," *Anderson v. Att'y Gen. of Kan.*, 425 F.3d 853, 860 (10th Cir. 2005), and therefore, "[a] § 2255 petitioner is entitled to an evidentiary hearing when there is a disputed factual issue." *United States v. Gallegos*, 459 F. App'x 714, 716–17 (10th Cir. 2012).

Because Petitioner and counsel have offered contradictory sworn statements as to whether Petitioner requested that counsel file an appeal on his behalf, the Court cannot, without more, resolve the Motion as to this issue. I conclude that these facts require a limited evidentiary hearing. *See United States v. Lee-Speight*, 529 F. App'x 903, 905 (10th Cir. 2013) (holding that the district court erred in failing to hold an evidentiary hearing on a § 2255 petitioner's ineffective assistance of counsel claim, in light of the petitioner's "sworn statement that his sentencing counsel . . . failed to file a notice of appeal . . . as requested by petitioner."). If the Court adopts this PF&RD, the undersigned will order the Clerk of the Court to appoint counsel for Petitioner in accordance with Rule 8(c) of the Rules Governing Section 2255 Proceedings for the United States District Courts. *See* Rule 8(c) ("If an evidentiary hearing is warranted, the judge must appoint an attorney to represent a moving party who qualifies to have counsel appointed under 18 U.S.C. § 3006A.").

## CONCLUSIONS AND RECOMMENDED DISPOSITION

**IT IS THEREFORE RECOMMENDED** that, should the Court adopt this PF&RD, counsel will be appointed for Petitioner and an evidentiary hearing will be held on the limited issue of whether Petitioner requested that counsel file an appeal.

**IT IS FURTHER RECOMMENDED** that the Court deny all other claims raised by Petitioner in his Motion, as they are capable of resolution on the record.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN FOURTEEN DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any written objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.** *See* **D.N.M.LR-Civ. 10.1. If no objections are filed, no appellate review will be allowed.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**